OPINION OF THE COURT
Per Curiam.
Respondent Susan B. Arkun was admitted to the practice of law in the State of New York by the Second Judicial Department on April 25, 1990, under the name Susan Baidzar Arkun. At all times relevant to this proceeding, respondent has maintained a registered business address within the First Judicial Department.
In the summer of 2005, respondent had a brief affair with a married man. In September 2005, respondent began leaving voice-mail messages on her paramour’s cell and work telephones, and also called his home to speak with his wife. The calls went on for several months. Respondent also showed up uninvited at her paramour’s place of business and at other social events that he attended. In April 2006, respondent was arrested and charged with one count of stalking in the fourth degree; 44 counts of aggravated harassment in the second degree; and two counts of harassment in the second degree. An order of protection was issued against respondent directing her to stay away from her paramour and refrain from any contact or communication with him or his wife. Despite the order of protection, which respondent signed in acknowledgment, she continued to call and harass her paramour. As a result, on or about May 5, 2006, respondent was arrested and charged with four counts of criminal contempt in the second degree, one count of aggravated harassment in the second degree, and one count of stalking in the fourth degree. On or about May 10, 2006, respondent was arrested and charged with one count of aggravated harassment in the second degree and one count of stalking in the fourth degree for activities that had occurred between September 2005 and April 2006, prior to the initial arrest.
On March 20, 2008, following a bench trial in Criminal Court, New York County, respondent was convicted of two counts of stalking in the fourth degree, in violation of Penal Law § 120.45; four counts of attempted aggravated harassment in the second degree, in violation of Penal Law §§ 110.00 and 240.30; and four counts of attempted criminal contempt in the second degree, in *113 violation of Penal Law §§ 110.00 and 215.50; all class B misdemeanors. On May 15, 2008, respondent was sentenced to a one-year term of probation. As part of her probation, respondent was required to attend Project Stop Harassment and Relationship Problems (SHARP), a six-month dialectical behavior treatment program. A two-year order of protection was also issued against respondent directing her to refrain from any contact or communication with her paramour and his family.
On April 4, 2011, the Departmental Disciplinary Committee (Committee) filed a petition seeking an order declaring that the crimes of which respondent has been convicted to be “serious crimes” pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.12 (a) and Judiciary Law § 90 (4) (d). By unpublished order entered June 10, 2011, this Court deemed the offenses of which respondent was convicted to be “serious crimes” and, pursuant to 22 NYCRR 603.12 (a), referred the matter back to the Committee for assignment to a Hearing Panel to conduct a sanction hearing.
At the sanction hearing, respondent testified on her own behalf and offered evidence of various personal difficulties as mitigation. In 1999, respondent was forced to stop practicing law as a result of mal de barquement syndrome, a chronic disorder which causes her to suffer persistent vertigo-like symptoms. In or about the summer of 2005, while in a vulnerable state, she became involved in a brief, intimate relationship, with her paramour. In September 2005, respondent became emotionally unhinged by the unstable nature of her relationship with her paramour and began telephoning him repeatedly over a period of several months, leaving voice mails and even calling his wife at home. Respondent also showed up uninvited at his place of work as well as at social events that her paramour attended. In May 2006, respondent became distraught over the fact that her paramour had brought criminal charges against her and violated the order of protection by repeatedly calling him in an attempt to resolve their outstanding issues. Respondent emphasized that she did not threaten or engage in violence, and expressed deep remorse for her behavior.
As part of her mitigation, respondent submitted a psychological examination report from Dr. Ethell A. Geller, who previously treated respondent from 1995 to 1997. In February 2009, on her own initiative, respondent contacted Dr. Geller to see if she had any outstanding treatment needs to address. In his report, dated February 20, 2009, Dr. Geller opined that the SHARP treatment *114 program had helped respondent develop alternative coping skills and strategies to deal with situations similar to that which led to her conviction. Dr. Geller concluded that respondent did not require further outpatient therapy and her prognosis was positive.
Respondent’s extensive history of pro bono activities when she was able to practice law was also presented to the Hearing Panel. Respondent set up numerous nonprofit corporations, including one for media attention on women’s issues, particularly abusive relationships, and a branch of the Osborne Association; she handled uncontested divorces and name changes for abused women through the Battered Women’s Justice Project and Sanctuary for Families, and also represented refugees in their applications for asylum.
In posthearing memoranda, the Committee argued that respondent should be suspended for six months, and respondent suggested a sanction no more severe than a private reprimand or public censure. On June 19, 2013, the Hearing Panel issued its report recommending that respondent be publicly censured. The Panel noted that the Committee’s recommendation of a six-month suspension rested, in large part, on the case of Matter of Muller (231 AD2d 296 [1st Dept 1997]), in which this Court suspended the respondent for six months for making numerous harassing telephone calls to his former girlfriend. However, in Muller, the respondent also posed as a law clerk to a federal judge in order to harass his girlfriend at her law school and to obtain information about her so he could make misrepresentations about her in an attempt to discredit her. In the Panel’s view, the instant matter could be distinguished from Muller based on a number of mitigating factors supporting public censure, inter alia, that respondent has not practiced law since 2000 due to her disability caused by mal de barquement syndrome; her successful completion of the SHARP treatment program; her positive prognosis by a licensed psychologist; her credible remorse; and an impressive history of pro bono work and charitable activities.
The Committee now moves for an order pursuant to 22 NYCRR 605.15 (e) (2), confirming the Hearing Panel’s report and recommendation and imposing the recommended sanction of public censure. Respondent has not submitted a response.
In assessing the appropriate penalty, this Court must look to all of the circumstances involved in respondent’s behavior. Here, respondent engaged in illegal, harassing conduct and violated *115 an order of protection while criminal charges were pending. Nonetheless, weighing the aberrational nature of the instant misconduct with the evidence in mitigation, the sanction of public censure is appropriate.
Moreover, the sanction of public censure is consistent with New York precedent for similar levels of misconduct (see e.g. Matter of Sims, 36 AD3d 304 [1st Dept 2006] [public censure was appropriate sanction for attorney who was reprimanded in New Jersey on basis of his conviction of harassment, based on his improper touching of legal secretary]; Matter of McDonald, 241 AD2d 255 [2d Dept 1998] [attorney’s leaving telephone messages containing vulgar and threatening language on answering machine warranted public censure]; Matter of Wolff, 37 AD2d 76 [4th Dept 1971] [attorney’s refusal to honor protective orders of Family Court, repeated involvement with police in connection with arrests together with resulting unfavorable publicity warranted censure]).
Accordingly, the Committee’s petition should be granted to the extent of confirming the Hearing Panel’s report and recommendation and respondent should be publicly censured.
Mazzarelli, J.P, Renwick, DeGrasse, Freedman and Richter, JJ., concur.
Respondent publicly censured.